UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA HATHCOAT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-1908-JDT-TAB |
| ) | |
| MICHAEL H. LEPPER, In His Official and ) | |
| Individual Capacities, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT (Docket No. 27)**[1]

Plaintiff Lisa Hathcoat brings this action pursuant to 42 U.S.C. § 1983 to remedy alleged violations of her Fourth and Fourteenth Amendment rights to be free of unreasonable searches and seizures.  In her complaint filed November 22, 2004, Ms. Hathcoat alleges that Defendant Michael Lepper, an Indiana State Trooper, used unnecessary and/or unreasonable force in seizing her and taking her into custody after a traffic stop.  She asserts that as a result of Trooper Lepper's actions she suffered damages including "permanent injury, pain, suffering and past and future medical expenses."  (Compl. 2.)  Based on these and other related allegations, Ms. Hathcoat brings three claims for relief against Trooper Lepper and apparently the Indiana State Police or the State of Indiana.

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

On December 6, 2005, Trooper Lepper moved for summary judgment on Ms. Hathcoat's claims, arguing that Ms. Hathcoat fails to present a genuine issue of material fact under Federal Rule of Civil Procedure 56 that would allow the claims to go to trial. Ms. Hathcoat responded to the motion on January 4, 2006, with a reply brief being filed on January 20, 2006. The motion for summary judgment is therefore fully briefed and ripe for review.

I.   BACKGROUND

On November 23, 2002, Trooper Lepper was on routine patrol when, at about 11:30 p.m., he encountered Ms. Hatchcoat driving on 96th Street.  (Lepper Dep. 22:7-11.)² Apparently because Ms. Hathcoat traveled through a red light in her vehicle (*id.*), Trooper Lepper stopped her and asked to see her license and registration.  (*Id.* 23:6-8.) Ms. Hathcoat complied, and at that time Trooper Lepper ascertained that she had a suspended license.  (Hathcoat Dep. 23:11-15.)

Trooper Lepper suspected that Ms. Hathcoat might have been driving while intoxicated, so he requested that she take a portable breath test, and she complied. (Lepper Dep. 23:14-20.)  The requests of the test showed that Ms. Hathcoat had a blood alcohol level of .075, which was within the legal limit in Indiana at that time.  (*Id.* 24:5-6.)   At that point, Trooper Lepper decided to transport Ms. Hathcoat to the Fishers Police Department.  (*Id.* 24:1-5.)  He informed Ms. Hathcoat that he was going to place

---

² When citing deposition testimony in future filings, counsel should cite not only to the page numbers of the deposition transcript, but also to the line numbers of the transcript.

her in handcuffs, but she refused. (*Id.* 24:19-22.) Trooper Lepper took somewhere between two and five minutes to speak with Ms. Hathcoat before she relented to being handcuffed. (*Id.*; Hathcoat Dep. 32:14-23.) Ms. Hathcoat contends that she did not physically object to Trooper Lepper's control of her (*id.* 29:16-20), and Trooper Lepper does not appear to dispute the physical component of that contention. (Lepper Dep. 24:25-25:3.)

While at the Fishers Police Department, Trooper Lepper twice again attempted to test Ms. Hathcoat's blood alcohol level, but she was unable to fully take the tests due to an asthma condition. (*Id.* 28:18-23). Ms. Hathcoat remained handcuffed during the entire time she was held at the Fishers Police Department. (*Id.* 30:13-16.) She contends that she informed Trooper Lepper "all night long" that the handcuffs were too tight and were hurting her, specifically once before entering the Fishers Police Department and once after leaving. (Hathcoat Dep. 31:7-11.) Ms. Hathcoat acknowledges that at one point Office Trooper loosened the left handcuff in response to her complaint that the handcuff was cutting off circulation to her left thumb. (Hathcoat Dep. 40:22-25.) However, Trooper Lepper does not recall Ms. Hathcoat having ever complained that the handcuffs were too tight. (*Id.* 25:13-15.)

Ms. Hathcoat contends that Trooper Lepper left the handcuffs on her for such a long period of time "for the sole purpose of obtaining a further [blood alcohol] test" (Resp. 2), which Trooper Lepper disputes. He asserts that he kept Ms. Hathcoat handcuffed because she failed to cooperate with him (*id.* 27:16-28:17), she was going through "constant mood changes" (*id.*), he did not want her to put anything into her

3

mouth prior to giving a valid blood alcohol test (*id.* 30:19-31:2) and that he was afraid that if he took the cuffs off, he would not be able to get them back on Ms. Hathcoat without a fight.  (*Id.* 31:15-32:2.)

Trooper Lepper then transported Ms. Hathcoat to the Hamilton County Jail, where she remained handcuffed.  (Hathcoat Dep. 43:25-44:9.)  He again attempted to test her blood alcohol level, but this time she refused.  (*Id.*)  Trooper Lepper removed the handcuffs while Ms. Hathcoat was at the Hamilton County Jail, at approximately 1:06 a.m.  (*Id.*)  The parties do not dispute that Ms. Hathcoat was handcuffed for a period of approximately one hour and twenty-one minutes.

Ms. Hathcoat eventually pled guilty to reckless driving, but not driving while intoxicated.  (*Id.* 35:4-8.)

## II.   DISCUSSION

In his motion for summary judgment, Trooper Lepper requests that the court enter judgment in his favor because "there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law."  (Mot. Summ. J. 1.)  In support thereof, Trooper Lepper suggests that there is no dispute of material fact that his stop and seizure of Ms. Hathcoat was objectively reasonable under the circumstances.  He also argues that he is not a "person" subject to suit under 42 U.S.C. § 1983, and therefore to the extent Ms. Hathcoat is attempting to sue the Indiana State Police Department, that claim is barred by Eleventh Amendment sovereign immunity.  Trooper Lepper therefore argues that all of Ms. Hathcoat's claims must be dismissed.

### A.     Standard of Review

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. of Civ. Pro. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

### B.     The Plaintiff Concedes that she is not Asserting a Claim Against the Defendant in his Official Capacity.

Trooper Lepper first raises the preliminary argument that if Ms. Hathcoat is suing him in his official capacity, he enjoys "Eleventh Amendment Sovereign Immunity."  (Mot. Summ. J. 8.)  Ms. Hathcoat's complaint does appear to assert claims against Trooper Lepper in both "His Official and Individual Capacities" (Compl. 1), as the case caption reads.  However, Ms. Hathcoat concedes in her Response to the Motion for Summary

Judgment that "Lepper is not being sued in his official capacity." (Resp. 3.) Therefore, the court need not address Trooper Lepper's immunity argument.

### C. To the Extent the Plaintiff is Attempting to Assert Claims Against the State of Indiana or the Indiana State Police, Those Claims Must Fail.

Similarly, to the extent Ms. Hathcoat is attempting to assert claims against the State of Indiana, and particularly the Indiana State Police Department, as Trooper Lepper contends, those claims must fail because sovereign immunity protects those entities from suit. Trooper Lepper asserts that language in Ms. Hathcoat's complaint suggests that she intends to sue the State of Indiana, and the court understands why this confusion may have arisen. Ms. Hathcoat's complaint does appear to advance at least one claim against the State, as it alleges in Count II that "The State of Indiana, by and through the Indiana State Police, maintains a policy or custom in its policies or procedures for properly restraining persons suspected of driving while intoxicated, or addresses complaint of pain or injury arising from the restraints, that has violated the Constitutional rights of Plaintiff." (Compl. 3.) And in her Response, Ms. Hathcoat does not respond to Trooper Lepper's argument with respect to state sovereign immunity.

The Eleventh Amendment bars actions for damages against the states brought in federal court. *Broker v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (citing *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997)). Thus, this court lacks subject matter jurisdiction over any claims for damages against the State of Indiana or the Indiana State Police. *See Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

6

To the extent Ms. Hathcoat attempts to advance any such claims, the court therefore will dismiss them for lack of jurisdiction.

**D.     The Defendant is Entitled to Qualified Immunity on the Plaintiff's Claim Against him Individually Arising Under 42 U.S.C. § 1983.**

Finally, with respect to Ms. Hathcoat's claim against Trooper Lepper individually arising under 42 U.S.C. § 1983 for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, Trooper Lepper seeks qualified immunity. In order to determine if a defendant is entitled to qualified immunity, the court must determine whether undisputed facts demonstrate that the defendant violated the plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional right was violated, the court must then ask whether the constitutional right was clearly established at the time the plaintiff was allegedly injured. *Id.* "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne v. Pauley*, 337 F.3d 767, 775-76 (7th Cir. 2003) (citing *Saucier*, 533 U.S. at 202). "Qualified immunity 'leaves ample room for mistaken judgments' by police officers." *Id.* at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

In the instant case, assuming Ms. Hathcoat presents undisputed facts that Trooper Lepper violated her rights under the Fourth and Fourteenth Amendments,[3] she

---

[3] This may or may not be the case, but for the purposes of the instant motion the court need not make a finding on the issue.

still has not established that Trooper Lepper should have known that handcuffing her in the manner she describes violated those rights. The cases Ms. Hathcoat cites in support of her position, *Payne* and *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), are instructive here, not because their facts mirror Trooper Lepper's undisputed actions, but because they diverge from them. In both cases, the Court of Appeals for the Seventh Circuit describes the constitutional limitations on the use of handcuffs on an arrestee. In *Payne*, the Seventh Circuit found that at the summary judgment stage, a district court cannot accept a police officer's account of his use of handcuffs during an arrest over a differing account of the arrestee. *Id.* at 778-779. But in the instant case, the court is not being asked to make any such credibility determination, and, in fact, would not do so on summary judgment. And in *Herzog*, the Seventh Circuit determined that an officer's refusal to loosen a plaintiff's chafing handcuffs constitutes excessive force where the plaintiff had violated no law, was arrested without probable cause and did not resist. *Id.* at 1044. That certainly was not the case here. Ms. Hathcoat was pulled over for suspicion of driving while intoxicated, Trooper Lepper smelled alcohol on her breath, noted her erratic behavior and she ultimately pled guilty of reckless driving.

The court does not doubt that the use of handcuffs on Ms. Hathcoat was uncomfortable. However, she was handcuffed for only one hour and twenty-one minutes, a relatively short period of time. Moreover, Ms. Hathcoat admits that during the time she was handcuffed, Trooper Lepper responded to her complaints of discomfort by loosening the handcuff that was allegedly cutting off circulation to her left

thumb. In sum, there appears to have been nothing truly extraordinary about Ms. Hathcoat's arrest and Trooper Lepper's use of the handcuffs; particularly in light of her apparent state of intoxication. Indeed, the arrest and use of handcuffs appears to have been fairly routine.[4]

Based on these undisputed facts, Trooper Lepper reasonably believed that his handcuffing of Ms. Hathcoat was lawful in light of clearly established law and the information he possessed. *See, e.g., Scott v. Glumac*, 3 F.3d 163, 164 (7th Cir. 1993). Therefore, he is entitled to qualified immunity on her 42 U.S.C. § 1983 claim against him in his individual capacity.

### III.     CONCLUSION

For these reasons, the court **GRANTS** the Motion for Summary Judgment (Docket No. 27). An appropriate judgment will be entered.

---

[4] The court suspects that Ms. Hathcoat will disagree with this assessment, but for the purposes of the reasonableness analysis, the court looks not to the perceptions of the plaintiff-arrestee, but to those of a reasonable, well-trained officer in the defendant's position.

ALL OF WHICH IS ENTERED this 18th day of April 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Jeffrey O. Meunier
Kiefer & McGoff
jom@kmlawyers.com

Thomas D. Quigley
Indiana State Attorney General
thomas.quigley@atg.in.gov